**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0576n.06

No. 09-5976

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 31, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| PAULA PUSEY, | ) |
| | ) |
| **Plaintiff-Appellant,** | ) |
| | ) **ON APPEAL** FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| v. | ) THE WESTERN DISTRICT OF |
| | ) KENTUCKY |
| | ) |
| UNITED PARCEL SERVICE, INC., | ) **O P I N I O N** |
| | ) |
| **Defendant-Appellee.** | ) |
| | ) |

BEFORE: NORRIS, MOORE, and McKEAGUE, Circuit Judges.

   **ALAN E. NORRIS, Circuit Judge.**   Paula Pusey filed this action against her long-time

employer, United Parcel Service, Inc. ("UPS"), after she allegedly experienced workplace

discrimination based upon her gender and race. Federal court jurisdiction is premised upon diversity

of citizenship, 28 U.S.C. § 1332, and plaintiff relies upon the Kentucky Civil Rights Act ("KCRA"),

Ky. Rev. St. § 344.040, as the legal basis for relief.  The district court granted summary judgment

to UPS after concluding that Pusey had failed to establish a prima facie case by showing that the

harassment that she allegedly endured was based on either her gender or her race.

1

## I.

Pusey, a Caucasian woman, began working for UPS in 1988 and continues to work there as an aircraft mechanic. She alleges that, starting in September of 2005, an African-American co-worker named James Carter began a campaign to harass and intimidate her.

Pusey contends that Carter had a history of inappropriate behavior at UPS. On July 2003, UPS terminated him based on an incident in which he allegedly tried to intimidate a female supervisor named Toni Thompson by blocking her path. An arbitration panel, however, later determined that Thompson had exaggerated the incident and reduced Carter's punishment to a five-day suspension. According to Pusey's deposition testimony, Carter harassed several other women at UPS. For instance, she claims that he stole sunglasses belonging to Ursula Hicks, one of Pusey's co-workers and that, in Pusey's opinion, Hicks was scared of Carter. She also alleges that Carter was generally rude and unprofessional in his interactions with Sharon Bogger, another female co-worker. Finally, Pusey claims that Carter assaulted another employee, Diana Chaney, when he "elbowed" her. With the exception of Bogger, however, Pusey did not witness any of this harassment but merely heard about it from the women involved, none of whom submitted affidavits.

Pusey's own problems with Carter began in early September 2005 when he used Pusey's work computer and repeatedly refused to leave when asked to do so. Following this incident, on September 16, Carter lunged forward at Pusey as he was walking past her. His elbow hit her left breast and Pusey fell backwards. She was able to prevent herself from hitting the ground by grabbing

onto a chair. After she asked if he intended to apologize, Carter snickered. Throughout the day, he repeatedly acted as though he was about to lunge at her every time she walked past him.

Pusey reported the incident and Carter was suspended for thirty days as a result. When he returned from suspension, he continued to behave inappropriately. For instance, Pusey alleges that he would walk through her work area while laughing, grunting, whistling, and generally trying to make his presence known. On some occasions, he used phrases such as "no one can touch me." In November 2005, Pusey claims that Carter approached her desk and stated that "it was a good day to be a black man" while looking directly at her. She reported this incident to her supervisor, who told her that he would look into it. She does not know whether any action was ever taken, but according to a union grievance filed by Carter, management instructed Carter to stay away from Pusey.

Pusey continued to complain to UPS about Carter's actions and, on February 16, 2006, one of Carter's managers sent him a letter informing him that his work schedule had been adjusted so that it would not overlap with Pusey's. The letter also instructed Carter to avoid any contact with Pusey and to remain at least fifty feet away from her.

According to Pusey, however, Carter violated the restraining order more than fifteen times. In particular, Pusey alleges that on one occasion she was working overtime when Carter walked behind her while laughing, walked "upfront," laughed, turned around, walked back, looked Pusey "directly in the face," continued laughing, walked past her, went to "the back," turned around, walked "upfront," and then repeated this motion two more times. Pusey claims that she became very

3

upset as a result and yet her supervisor, who was right next to her, made no effort to force Carter to leave. On another occasion, Pusey claims that Carter stared at her while she was outside of the employee cafeteria. Finally, Pusey alleges that Carter once stopped about three feet from her work station and began speaking with another employee, Jeff Matherly. According to Pusey, Carter told Matherly that he had seen Matherly in his "end of town," then stated that "[w]ell, maybe the next time I see you, I'll just run you down," and then looked toward Pusey. As a result of Carter's actions, Pusey claims that she was constantly afraid and even began experiencing chest pains which required medication.

Pusey continued to complain and management assured her that the problem would be addressed. Yet Pusey contends that Carter's conduct remained the same. Furthermore, one of her supervisors told her to "watch [her]self" and avoid being in the same area as Carter, which Pusey regarded as unfair because Carter caused the problems. She also alleges that she was once denied overtime so as to avoid a scheduling overlap with Carter. UPS eventually terminated Carter in 2007 for unrelated conduct, and an arbitration panel upheld this decision.

On August 28, 2006, Pusey filed a complaint in the United States District Court for the Western District of Tennessee. She subsequently filed an amended complaint. In the amended complaint, she alleged claims of hostile work environment and retaliation under the KCRA, along with claims of negligent supervision and negligent retention. After discovery, UPS moved for summary judgment, and in her response, Pusey abandoned all but her claim of hostile work

environment. As mentioned earlier, the district court granted UPS's motion, reasoning that Carter's harassment was not "based on" either Pusey's race or sex.

**II.**

"This court reviews de novo a district court's decision to grant summary judgment." *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted).

"A sexual harassment claim brought under the [KCRA] is to be analyzed in the same manner as a claim brought under Title VII, its federal counterpart." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). Therefore, in order for Pusey's hostile environment claim to survive summary judgment, Pusey must present evidence that "(1) she is a member of a protected class; (2) she was subjected to unwelcomed racial [or sexual] harassment; (3) the harassment was race [or sex] based; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

The district court concluded that Pusey had failed to establish the third element of a prima facie case, which requires her to come forward with evidence that the harassment was based upon her sex or race. To meet this requirement, a plaintiff must show that the harassment was overtly racial or sexual in nature, *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 271 (6th Cir. 2009)

(dealing with sexual harassment); *Clay*, 501 F.3d at 706 (dealing with racial harassment), or must establish that "but for the fact of her sex [or race], she would not have been the object of the harassment." *Gallagher*, 567 F.3d at 271; *Clay*, 501 F.3d at 706. An example of the latter approach could include evidence that similarly situated individuals of a different race or sex were not subject to harassment.  *Clay*, 501 F.3d at 706-07.

With respect to her claim that she was harassed because she was white, Pusey relies primarily on two pieces of evidence: (1) Carter's statement that it "it was a good day to be a black man" and (2) Carter's grunting while in Pusey's vicinity. As for Carter's comment, a mere statement of racial pride provides no insight into whether an individual holds any animus against those of another race. As for Carter's alleged grunting, Pusey argues that Carter was "mimicking animals," thereby drawing upon early twentieth-century stereotypes that portrayed African-Americans as "predatory animal[s]" who preyed upon white women. There are obvious problems with this line of reasoning.  Nothing in the record suggests that Carter's grunting bore any resemblance to that of an animal — Pusey never testified that she thought Carter was imitating an animal nor did she provide any details as to the nature of the grunting.

With respect to her claim that Carter harassed her because she was a female, Pusey first points to the fact that he elbowed her on the breast. In her view, the breast is a "sexual area[]" and a jury could infer sexual animus. We disagree. Though an aggressive act, elbowing a breast rather than another part of the body is not sufficient to establish a sex-based animus. Furthermore, to the degree

6

that Pusey relies on Carter's alleged "grunting," as discussed above, the record contains no indication that the sounds he made were sexual in nature.

Pusey alleges that Carter did not harass other men and identifies several female employees whom Carter allegedly harassed. This evidence is based almost entirely upon inadmissible hearsay. None of the women involved submitted separate affidavits.

In short, we hold, as did the district court, that there is insufficient admissible evidence in the record to support Pusey's claim that she was the victim of workplace harassment because of her race or gender.

## III.

The judgment is **affirmed**.